IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GRIENGSAK NARASIRISINLAPA, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:05-CV-001-M |
| | § | |
| SBC COMMUNICATIONS, INC, and SBC | § | |
| ADVANCED SOLUTIONS, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Summary Judgment of Defendants SBC Communications, Inc. and SBC Advanced Solutions, Inc., filed November 21, 2005. Defendants filed a supporting appendix, including affidavits of David Ramsey, Rebecca Delgadillo, Charles Hastedt, Jr., Ronald Watson, Jr., and Marisia Parra-Gaona. Plaintiff filed his Response and supporting Appendix, including affidavits of Griengsak Narasirisinlapa, David Sponsel, Opal Oliver, Bill Steed, and Libardo Morales, on December 12, 2005. Defendants filed a Reply Brief on December 27, 2005. Considering the filings and the law, the Court **GRANTS** the Motion.

### I. FACTUAL BACKGROUND

Plaintiff Griengsak Narasirisinlapa is a 51-year-old man of Thai origin who is employed with SBC Advanced Solutions, Inc. ("SBC ASI"). Plaintiff started working for SBC ASI on June 12, 2000, as a Network Center Technician and is currently employed in that same capacity.

Plaintiff alleges that his supervisors and co-workers discriminated against him, retaliated against him, and made false statements about him at various times during his tenure at SBC ASI.

1

Plaintiff filed four charges with the EEOC. Plaintiff's first charge, filed September 29, 2003, alleges discrimination during the period between December 3, 2002, and September 29, 2003. Plaintiff's second charge, filed October 7, 2004, alleges discrimination and retaliation during the period between October 12, 2003, and October 2, 2004. Plaintiff's third charge, filed April 21, 2005, alleges retaliation for filing the charge dated October 7, 2004. Plaintiff's fourth charge, filed May 11, 2005, alleges discrimination, harassment, hostile work environment, and retaliation during the period between January 1, 2005, and March 31, 2005.

Narasirisinlapa filed this lawsuit on January 3, 2005, and filed an Amended Complaint on May 27, 2005. He brings claims of (1) discrimination on the basis of national origin, race, and age, (2) retaliation for activity protected by Title VII, the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"), (3) harassment and hostile environment based on race and national origin, (4) libel, slander, and defamation, (5) negligent hiring, supervision, and/or retention, and (6) conspiracy.[1] Defendants filed their Motion for Summary Judgment on November 21, 2005.

## II. STANDARD OF REVIEW

Summary judgment is warranted when the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Pourgholam v. Advanced Telemktg. Corp.*, No. 3:01-CV-2764-H, 2004 U.S. Dist. LEXIS 10659, at *2-3 (N.D. Tex. June 9, 2004) (citing Fed. R.

---

[1]Although a fair reading of the Amended Complaint does not clearly suggest a claim for conspiracy or negligent hiring, supervision, and/or retention, the Court will address the parties' arguments regarding these claims. *See generally Mongo v. The Home Depot, Inc.*, 3:02-CV-2593-R, 2003 U.S. Dist. LEXIS 17557, at *2 (N.D. Tex. Sept. 25, 2003).

Civ. P. 56; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 322-25). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts. Fed. R. Civ. P. 56(e). The court must review all evidence in the record, giving credence to evidence favoring the nonmovant as well as "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152 (2000). Further, "the court must draw all justifiable inferences in favor of the nonmovant." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.*, 140 F.3d at 625. "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no

3

genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991). However, in the absence of proof, a court will not conclude that the nonmoving party could prove the required facts. *Lynch Props.*, 140 F.3d at 625.

### III. ANALYSIS

*A. Plaintiff Does Not Show an Ultimate Employment Decision to Support His Charges of Discrimination and Retaliation*

Plaintiff alleges discrimination on the basis of national origin, race, and age and retaliation for activity protected by Title VII, the ADEA, and the ADA. To prevail on any of these claims, Narasirisinlapa must first establish a prima facie case. To prove a prima facie case for each of these claims, Narasirisinlapa must prove that he suffered an adverse employment action. *See Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003) (age discrimination); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004) (race discrimination); *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (retaliation based on the ADA); *Holtzclaw v. DSC Communc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (retaliation based on the ADEA); *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (retaliation based on Title VII). Defendants cite *Mattern v. Eastman Kodak Co.* for the proposition that Title VII is designed to only address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.[2] 104 F.3d 702,

---

[2]In *Fierros v. Texas Department of Health*, a panel of the Fifth Circuit questioned the continuing vitality of the *Mattern* ultimate employment decision doctrine in light of *Burlington Industries, Inc. v. Ellerth* and *Faragher v. City of Boca Raton*. *See Fierros*, 274 F.3d 187, 192 n.2 (5th Cir. 2001) (citing *Ellerth*, 524 U.S. 742, 765-66 (1998); *Faragher*, 524 U.S. 775, 807 (1998)); *see also Watts v. Kroger Co.*, 170 F.3d 505, 510 n.5 (5th Cir. 1999) (declining to reach the same issue); *but see Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 531-32 (5th Cir. 2003) (applying the ultimate employment decision doctrine without discussing *Fierros*,

4

707 (5th Cir. 1997) Ultimate employment decisions include acts "such as hiring, granting leave, discharging, promoting, and compensating". *Id.*

Plaintiff has admitted that his pay, benefits, and job title has not been affected by any actions of the Defendants. Narasirisinlapa has worked in the same position, in the same location, in the same non-management capacity throughout his entire tenure with Defendants. In his Response, without controverting these assertions, Narasirisinlapa seems to assert that (1) he was denied access to Defendants' promotion "processes" and (2) Defendants fabricated reports included in his personnel files.[3]

Narasirisinlapa has not demonstrated that any denial of access to promotion processes constituted an ultimate employment decision. First, Narasirisinlapa has not pointed the Court to any evidence of specific promotions he sought or any promotion decisions adverse to him.[4]

---

*Watts, Ellerth,* or *Faragher*); *Brazoria Cty. v. EEOC,* 391 F.3d 685, 692 (5th Cir. 2004) (same). Despite *Fierros,* Fifth Circuit district courts have continued to apply the ultimate employment doctrine to appropriate retaliation and discrimination claims. *See, e.g., Ramirez v. City of Robstown,* C-05-135, 2006 U.S. Dist. LEXIS 10520, at *31-32 (S.D. Tex. Feb. 27, 2006) (Ellington, M.J.); *Capers v. Dallas Indep. Sch. Dist.*, 3:03-CV-1305-M, 2004 U.S. Dist. LEXIS 16499, at *30 (N.D. Tex. Aug. 18, 2004) (Stickney, M.J.); *accepted by* 2005 U.S. Dist. LEXIS 4700 (N.D. Tex. Mar. 24, 2005) (Lynn, J.); *Hancock v. Brownlee,* SA-01-CA-1130 NN, 2003 U.S. Dist. LEXIS 24683, at *18-19 (W.D. Tex. Nov. 6, 2003) (Nowak, M.J.); *Reynolds-Diot v. Group 1 Software, Inc.*, 3:03-CV-0245-M, 2005 U.S. Dist. LEXIS 17102, at *13 (N.D. Tex. Aug. 17, 2005) (Lynn, J.). After raising *Mattern*, Plaintiff did not argue a different legal standard; therefore, this Court applies *Mattern* to Plaintiff's Title VII claims, notwithstanding any concerns noted in *Fierros*.

[3]"All of Defendants' arguments fail because they are based on Defendants' concealment of the fact that Defendants' hiring and promotion processes practices. [sic] Defendants do not have non-discriminatory systems to make opportunity equally available in a non-discriminatory manner. Classes of employees are totally cutoff from the processes. Not only that, Defendants using [sic] racial preference in administering employment processes. Defendants further targeted Plaintiff specifically for continue [sic] harassment, false accusation, and resort [sic] to fabrication of report and employee personal [sic] file to do harm to Plaintiff." Pl. Br. at 9.

[4]The Court notes that Narasirisinlapa filed a voluminous appendix to support his Response to Defendants' Motion for Summary Judgment, but refers to little of it in his Repsonse.

Instead, Narasirisinlapa simply accuses Defendants of "exploiting the secretive practices of discriminatory hiring and promotion process". Pl. Br. at 10. In his deposition, Plaintiff states that by "secretive", he means that "employees are allowed to be considered by promotion by "invitation only"[;] uninvited employees need not apply". Pl. Exh. 4 at 1. Although Plaintiff has not argued how such processes affected him individually, Plaintiff argues that such evidence is unnecessary: "In order to present a defense and claim that someone has never apply [sic] for a position or was denied a position, the application processes must exist and are [sic] available to all employees in a non-discriminatory manner." Pl. Br. at 11. Without deciding what evidence would be determinative, the Court notes that evidence showing that Narasirisinlapa was interested in and qualified for a particular promotion, but was denied a chance to apply, would tend to support a claim that Defendants did not promote him and that he thus suffered an ultimate employment decision.[5] Mere allegations of faulty processes, without a showing of how such processes affected Plaintiff, does not show a genuine issue of material fact as to whether Plaintiff suffered an ultimate employment decision.

Second, the claim that Defendants fabricated reports and placed them in Narasirisinlapa's personnel files, does not allege an ultimate employment decision. An action that only increases the chance that an employer will eventually discharge or fail to promote a plaintiff does not

---

"When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* As a result, the Court only considers the evidence specifically referred to in Narasirisinlapa's Response.

[5]*But see Dollis v. Rubin*, 77 F.3d 777, 779, 781-82 (5th Cir. 1995) (finding that the denial of a desk audit, which restricted the plaintiff's promotional opportunities and upward mobility, did not constitute an ultimate employment decision).

constitute an ultimate employment decision. *See Mattern*, 104 F.3d at 708; *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657-58 (5th Cir. 2002) (stating that reprimands do not constitute ultimate employment decisions); *see also Hernandez*, 321 F.3d at 532 n.2 (5th Cir. 2003) (collecting cases that found ultimate employment decisions and cases that did not find ultimate employment decisions). Although fabricated reports, like reprimands, could make it more likely that Narasirisinlapa would be fired or passed over for a promotion in the future, the creation of such a report in itself is not an ultimate employment decision.

Because there is unrebutted evidence that Plaintiff has not suffered an ultimate employment decision, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claims of age, race, and national origin discrimination and Plaintiff's claims of retaliation for activity protected by Title VII, the ADEA, and the ADA.

*B. In Connection with His Hostile Environment Claim, Plaintiff Does Not Show How Any Harassment Based on Race or National Origin Affects a Term, Condition, or Privilege of Employment.*

The Fifth Circuit discussed the elements of a Title VII hostile work environment claim in *Ramsey v. Henderson*:

> A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. In order to establish a hostile working environment claim, [a plaintiff] must prove: (1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

7

286 F.3d 264, 268 (5th Cir. 2002) (quotations omitted) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001); *Jones v. Flagship Int'l*, 793 F.2d 714, 719-720 (5th Cir. 1986)). Relying on statements from Narasirisinlapa's deposition, Defendants argue that Plaintiff cannot show how any racial harassment affects a term, condition, or privilege of his employment. In light of the evidence tendered by Defendants, Narasirisinlapa must now show that there is a genuine fact issue with respect to that element so that summary judgment is inappropriate. *See Lynch Props.*, 140 F.3d at 625; *Fields*, 922 F.2d at 1187.

The Court first examines whether Plaintiff has shown that he was subjected to unwelcome harassment. Racially discriminatory intimidation, ridicule and insults constitutes actionable harassment. *Felton v. Carter*, 315 F.3d 470, 485 (5th Cir. 2002) (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). Harassment is based on race if the complained of conduct had a racial character or purpose. *See Jackson v. Federal Express Corp.*, 3:03-CV-2341-D, 2006 U.S. Dist. LEXIS 10324, at *33 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.). In his Response, Narasirisinlapa makes general allegations about alleged problems at work.[6] Specifically, his Response notes that one of his supervisors, Charles Hastedt, (1) fabricated work reports; (2) made false accusations; (3) sent emails to many departments filled with "irrational personal attacks"; (4) encouraged Plaintiff to engage in conflicts with other employees; (5)

---

[6] "In addition to racial slur [sic], targeting minorities, instigate [sic] conflict between minorities, [Hastedt] would make condescendence [sic] remark from time to time. Such as concerned about Plaintiff's risk of traffic accident due to insufficient rest to attend jury duty [sic], [Hastedt] would say 'This is the price to pay for being an American citizen'. Defendants also tried to create racial conflict incident [sic] in order to take harsh action against Plaintiff. Job assignment, right to access information, and training are administered based on racial preferences." [sic] Pl. Br. at 7.

attempted to trick him into falsifying a record; (6) pretended not to know that Plaintiff had requested time off; and (7) erroneously told Plaintiff he was late. Although these seven items may constitute harassment, Plaintiff has not demonstrated how such harassment has a racial character or purpose. As a result, such harassment is not actionable under Title VII. Narasirisinlapa does, however, allege that Hastedt made racial slurs in the workplace, and such racial slurs may constitute unwanted racial harassment.

Defendants argue that Plaintiff cannot show that the harassment affected a term, condition, or privilege of employment. The Court agrees. To determine whether the harassment affected a term, condition, or privilege of employment, courts "look at the totality of the circumstances including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance". *See Harvill v. Westward Communic'ns*, 433 F.3d 428, 434 (5th Cir. 2005) (citing *Harris*, 510 U.S. at 23). Although Narasirisinlapa alleges that Hastedt made racial slurs, he has presented the Court with no evidence of the frequency of such comments or how such comments specifically interfered with his work performance or any other facts to demonstrate that the slurs were severe or pervasive. Plaintiff's bare allegation that Hastedt made racial slurs is too conclusory to create an issue of material fact on his harassment claim.[7] As a result, the Court **GRANTS** Defendants' Motion for Summary Judgment as to

---

[7] In *Harvill*, a sexual harassment case, the Fifth Circuit found that the plaintiff's allegations of "numerous touchings or fondlings" and "numerous butt grabbings" created an issue of material fact sufficient to withstand summary judgment. 433 F.3d at 436. In *Harvill*, however, the plaintiff presented evidence as to specific incidents of harassment, showing that a co-worker grabbed her and touched her breast, popped rubber bands at her breast, patted her buttocks, and questioned her about her sex life. *Id.* Plaintiff does not present similar detail about the alleged racial harassment he claims.

Plaintiff's claim of hostile work environment based on racial harassment.

Narasirisinlapa similarly fails to support his hostile work environment claim based on national origin harassment, and that claim thus fails for the same reason the racial claim does. Narasirisinlapa has not alleged any specific comments or actions based on his national origin. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plainiff's claim of hostile work environment based on national origin harassment.

*C. Tortious Interference*

In order to establish a claim for tortious interference, Plaintiff must show: (1) the existence of a contract[8] subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) that the act was a proximate cause of the damage to the plaintiff, and (4) actual damages. *Holloway v. Skinner*, 898 S.W.2d 793, 795-796 (Tex. 1995) (citing *Browning-Ferris Indus. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993)). A party may not tortiously interfere with its own contract. *Id.* at 794-95. Plaintiff does not show the existence of a contract subject to interference. In the section of his Response addressing this claim, Narasirisinlapa states that:

> Furthermore, the contract is binding for union members, between union members and the CWA, between union members and Defendants, and between union

---

[8]Narasirisinlapa states that the Court should recognize a cause of action for tortious interference with fiduciary duty. However, "no Texas court has recognized a tortious interference with fiduciary duty cause of action." *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 2005 Tex. App. LEXIS 7800, at *17 (Tex. App. – Houston [1st Dist.] Sept. 22, 2005, pet. denied); *but cf. ABC Inc. v. Gill*, 6 S.W.3d 19, 28 (Tex. App. – San Antonio 1999, pet. denied), *overruled on other grounds by Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (granting a motion for summary judgment as to a claim of tortious interference with fiduciary relationship, without addressing whether such a claim is generally viable under Texas law). The Court declines to recognize such a cause of action here.

members. This is evidence from 2001 Labor Agreements, Article XIX, Section 1 stats [sic] that "The Union shall be the exclusive representative of all the employees in the Bargaining Unit for the purposes of presenting to and discussing with the Company grievances" (exhibit 068).

Pl. Br. at 19. Although unclear, the Court interprets Plaintiff's claim as asserting that the Defendants tortiously interfered with the 2001 Labor Agreements. However, Plaintiff has produced no evidence of the content of the 2001 Labor Agreements, including that any such a contract is between Plaintiff and the Union, and that Defendants are not a party to such a contract. Exhibit 68, cited in Plaintiff's Brief, shows the cover page of the 2001 Labor Agreements, which prominently features the logos of the Communications Workers of America and SBC, and lists the names of five SBC companies. This page certainly suggests that Defendants are parties to the 2001 Labor Agreements. Plaintiff also included page 88 of the 2001 Labor Agreements, which contains Article XIX, entitled "Grievances". This section does not refute a finding that Defendants are not parties to the 2001 Labor Agreements.

From the excerpt of the 2001 Labor Agreements provided by the Plaintiff, the Court concludes that Plaintiff has not established an issue of material fact as to the existence of a contract subject to interference, because one cannot interfere with one's own contract. As a result, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim of tortious interference. *See Friou*, 948 F.2d at 974.

*D. Defamation*

When considering a defamation action, a court should consider, as a matter of law, whether any purported defamatory statement is reasonably capable of a defamatory meaning. *See Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654 (Tex. 1987). The court construes

such a statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Id.* at 655. The statements alleged to be defamatory must be viewed in their context; they may be false, abusive, unpleasant, or objectionable to the plaintiff and still not be defamatory in light of the surrounding circumstances. *MKC Energy Invs., Inc. v. Sheldon*, 182 S.W.3d 372, 2005 Tex. App. LEXIS 8212, at *8 (Tex. App. – Beaumont, Sept. 22, 2005, n.p.h.). The entire communication--not mere isolated sentences or portions--must be considered. *Id.*

In his Response, Narasirisinlapa points only to exhibit 34 in his appendix as evidence. Exhibit 34 is titled an "Employee Discussion Log", and is alleged to have been filled out by Hastedt.[9] It states the following: (1) Hastedt had a discussion with Narasirisinlapa because "friction was getting bad" between Narasirisinlapa and a co-worker, Hensley; (2) Narasirisinlapa and Hensley argued with each other on September 17, 2002; (3) Narasirisinlapa was animated and argumentative during a discussion with Hastedt about his relationship with Hensley; and (4) Narasirisinlapa told Hastedt that he wanted the union to "pressure" Hensley.[10]

A Texas state court recently considered a similar document in *Roberts v. Davis*, 160 S.W.3d 256, 262 (Tex. App. – Texarkana 2005, pet. denied). The court there stated that:

> We find that the letter of March 7, 2002, . . . as a matter of law is not defamatory. As can be seen by a reading of the letter, it is a critique by Roberts' supervisors of her job performance. It accuses her of deliberate obstruction and deteriorating behavior in her work and her relationships with other employees, and suggests

---

[9]"Defamation" is comprised of libel and slander. *Alaniz v. Hoyt*, 105 S.W.3d 330, 345 (Tex. App. – Corpus Christi 2003, n.p.h.). Narasirisinlapa does not point to any evidence of oral statements necessary to support a claim of slander. As a result, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim of slander. Thus, the only defamation claim the Court further analyzes is Plaintiff's libel claim.

[10]From the Employee Discussion Log, The Court cannot tell what this means in any more detail.

> that her attitude contributes to a dysfunctional work situation in the CAT Scan section. The letter does not accuse her of any crime or question her honesty, integrity, or virtue, and all the criticism is related to her work, which is a natural and proper concern on the part of an employee's supervisors or employer.

*Id.* Like the letter at issue in *Roberts*, the Employee Discussion Log does not accuse Narasirisinlapa of any crime, or question his honesty, integrity, or virtue. All factual criticisms in the Log are related to his work. As a result, the Court finds that the Log does not have a defamatory meaning, and thus is not actionable. *Id.* Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim of libel.

*E. Negligent Hiring, Supervision, and/or Retention*

Even if Plaintiff properly pleaded a claim of negligent hiring, supervision, and/or retention, such a claim is preempted by the Texas Workers' Compensation Act ("TWCA"). Under Texas law, the TWCA "provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence". *See Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997). Narasirisinlapa sustained any injuries resulting from any negligent hiring, supervision, or retention in the course of his employment. As a result, the Court finds this claim preempted by the TWCA, and **GRANTS** Defendants' Motion for Summary Judgment as to this claim.

*F. Civil Conspiracy*

In Texas, liability for civil conspiracy is predicated upon the commission of an underlying tort. *See Roehrs v. Conesys, Inc.*, No. 3:05-CV-829-M, 2005 U.S. Dist. LEXIS 33295, at *22 (N.D. Tex. Dec. 14, 2005) (Lynn, J.) (citing *Tex. Carpenters Health Benefit Fund v. Phillip*

13

*Morris, Inc.*, 21 F. Supp. 2d 664, 676 (E.D. Tex. 1998)). To survive a motion to dismiss on any conspiracy claims, Plaintiff's pleading must contain underlying torts which survive dismissal. The Court has dismissed each of Plaintiff's claims that could act as an underlying tort. As a result, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claims of civil conspiracy.

## CONCLUSION

For the reasons set out above, the Court **GRANTS** Defendants' Motion in its entirety.

**SO ORDERED.**

March 29, 2006.

_____
BARBARA M.G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS